## Kenny v. Commonwealth.

(Decided November 20, 1925.)

### Appeal from Nicholas Circuit Court.

1. Criminal Law—Courts Judicially Know that "Spirituous Liquor" and "Moonshine Whiskey" Mean Intoxicating Liquors.—Courts judicially know that words and phrases such as "spirituous liquor" and "moonshine whiskey" have same meaning as is given words "intoxicating liquors."

2. Intoxicating Liquors—Indictment Held to Charge Offense of Unlawfully Possessing Intoxicating Liquor—"Spirituous"—"Moonshine."—Indictment charging defendant with possession of spirituous liquor, to-wit, moonshine whiskey, not for any of the excepted

purposes, held sufficient to charge offense of possessing intoxicating liquors, in view of Criminal Code of Practice, section 122, subsection 2, and section 137, notwithstanding failure to allege that moonshine whiskey was an intoxicating liquor; "spirituous" meaning alcoholic, ardent, as spirituous liquors, and "moonshine" meaning illicit liquor, as moonshine whiskey.

3.   Intoxicating Liquors—Evidence Held to Sustain Conviction for Possessing Spirituous Liquors.—In prosecution for possessing spirituous liquors, evidence held to sustain conviction.

SAMUEL HOLMES and WILLIAM CONLEY for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By an indictment returned by a grand jury in the Nicholas circuit court the appellant, Bruce Kenny, was charged with the offense of wilfully, unlawfully and feloniously having in his possession "spirituous liquor, to-wit, moonshine whiskey, not for medicinal, sacramental, scientific or mechanical purposes." In a second paragraph of the indictment the appellant's previous conviction of a precisely like offense to that above described, his trial therefor, and conviction thereof in the Fleming circuit court, all occurring before the commission by him of the offense for which he was indicted in this case, were substantially alleged, as was the further fact, that the judgment of that court manifesting his trial and conviction of the first offense had not been modified or reversed.

The allegations of the second paragraph of the indictment were made because necessary to bring the offense for which the appellant was indicted and prosecuted in this case within the provisions of chapter 33, section 2, Acts General Assembly, 1922, which declare such a second offense, if the accused shall have been convicted of the one first committed by him, a felony and punishable as such.

On his trial in the Nicholas circuit court, which occurred at its February term, 1925, the appellant by verdict of the jury was found guilty  as charged in the indictment and his punishment fixed at confinement of two years in the penitentiary. From the judgment entered by the trial court in approval of that verdict, he has appealed.

The rulings of the trial court, assigned by the appellant as error requiring the reversal of the judgment appealed from, are: (1) Its overruling of the appellant's demurrer to the indictment. (2) That "the evidence failed to prove an offense under the law." (3) The failure of the court to properly instruct the jury, and its refusal of instructions offered by the appellant.

The single argument advanced by counsel for the appellant in support of the latter's complaint of the overruling of his demurrer to the indictment, is that its description of the liquor charged to have been unlawfully possessed by the appellant was insufficient, it being insisted that the indictment's mere designation of such liquor as "moonshine whiskey," in the absence of a further allegation that moonshine whiskey is an intoxicating liquor, rendered it fatally defective. In elaboration of this view it is further argued that as intoxicating liquor, the possession of which is condemned by the statute as unlawful, is designated therein and by its various provisions described by that term, in order to make its possession by the accused unlawful and, therefore, an offense denounced by the statute, it must be alleged in the indictment or warrant under which he is brought to trial to be "intoxicating liquor."

It will be observed that the argument of counsel ignores the presence both in the accusatory and descriptive parts of the indictment of the words "spirituous liquor;" and attaches no importance to the presence in its descriptive part of the word "whiskey" which follows and is coupled with the word "moonshine." In Webster's New International Dictionary, page 2015, the word "spirituous," as applied to liquors, is thus defined:

"Spirituous; containing, or of the nature of, alcoholic spirit; alcoholic; ardent; as spirituous liquors."

In the same volume, page 1403, among other definitions given the word "moonshine," are the following: (1) "Moonshine; liquor smuggled or illicitly distilled. (2) Moonshine; designating, or pertaining to, illicit liquor; as moonshine whiskey."

We think the words "spirituous liquor" employed in the indictment of the case at bar for the purpose of designating the intoxicating character of the liquor therein alleged to have been unlawfully in the possession

of the appellant, were alone sufficient to as fully inform him that such was its character as if the word "intoxicating" instead of "spirituous" had been used in describing the liquor. On the other hand, if the word "spirituous" had been omitted from the indictment, the intoxicating character of the liquor therein mentioned is clearly manifested by the presence in the descriptive part of the indictment, immediately following the word "liquor," of the phrase "to-wit, moonshine whiskey," which, in addition to indicating its power to produce intoxication, as clearly indicates the further fact that it was illicitly manufactured as well as unlawfully possessed.

Of the several sections of the Criminal Code that have a bearing on the question under consideration, the provisions of section 122, subsection 2, will throw upon it the light more particularly necessary to its proper solution. That subsection, in declaring the manner in which the acts constituting the offense charged must be stated in the indictment, provides that it shall contain:

> "A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended, and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case."

It should be added that words and phrases found in an indictment like those complained of in the case at bar, are required by section 137, Criminal Code, to be "construed according to their usual acceptation in common language." It may well be said to be judicially known to the courts that words and phrases such as "spirituous liquor" and "moonshine whiskey" have the same meaning that is given the words "intoxicating liquors," and that such is not only their usual meaning, but likewise the meaning universally attributed to them. Indeed, they are not susceptible of any other meaning than that conveyed by the words "intoxicating liquor."

Fortunately, we are not without authority upon which to rest this conclusion, such authority being found in more than one decision of this court. One of these cases is that of Middleton v. Commonwealth, 197 Ky. 422. The ground chiefly urged by the appellant for the reversal of the judgment of the trial court, together with this

court's ruling thereon, is set forth in the following excerpt from the opinion:

"The insistence for appellant is that the charge of 'transporting liquor' does not sufficiently describe the offense defined by this statute to comply with the above provisions of the Code. While it is true, of course, as urged, that there are many liquors other than spirituous, vinous, malt and intoxicating liquors, and which may be transported lawfully, that fact of itself is not sufficient to render the indictment fatally defective, if the word 'liquor' by itself, according to its usual acceptation in common language, is such as to enable a person of common understanding to know that intoxicating liquor only was intended, since, as we have seen, this is all that is required. That the word 'liquor' and the words 'intoxicating liquor' are commonly used synonymously is a matter of common knowledge, and that such was its use here, it seems to us, must have been understood by any person of common understanding, and in our judgment the court did not err in overruling the demurrer to the indictment."

In Brown v. Commonwealth, 198 Ky. 633, the indictment charged the accused with "unlawfully transporting spirituous liquor," and it was held that such description of the liquor was sufficient, as the term "spirituous liquor," is well understood by people generally to be "intoxicating liquor." Garrison, etc. v. Commonwealth, 200 Ky. 259.

For the reasons stated in the opinion and the support given them by the authorities, *supra,* there can be no doubt as to the sufficiency of the indictment under which the appellant was tried and convicted in the court below; hence the action of that court in overruling his demurrer thereto was not error.

The appellant's contention that the evidence failed "to prove an offense under the law" is wholly devoid of merit. This contention is bottomed on the theory that the omission from the indictment of an express allegation that the liquor described therein was "intoxicating liquor" rendered incompetent all evidence introduced by the Commonwealth to prove that such was its character, or his possession of it; for which reason his objections to the whole of such evidence should have been sustained instead of overruled by the trial court, as was done. As

this contention was, in effect, rejected by our ruling holding the objections to the indictment raised by the appellant's first contention untenable, it will be unnecessary to further discuss it.

Briefly outlined the evidence for the Commonwealth, which was mainly furnished by the testimony of J. F. Gaunce, sheriff of Nicholas county, L. B. Barton and Charles Ewell, his deputies, substantially was that the liquor in question was discovered by them through a search made of the appellant's house and premises authorized by a legal search warrant in their possession. That upon their getting in view of the appellant's residence, they saw the latter, his son, daughter and one Cook, a boy of the neighborhood, on the front porch, from which, upon seing the approach of the officers, all of them, save Cook, immediately went into the house. When the officers got to the house, Gaunce entered it and Barton and Ewell went to the rear of the house. In an upstairs room of the house Gaunce found the appellant's son and in the same room a broken bottle strongly smelling of whiskey, also a bed the covering of which emitted a strong odor of whiskey, with which it evidently had just been saturated. From the rear of the house Barton and Ewell saw the appellant leave it with a large can which he placed behind a smoke, or meat, house, and from there made his way to a barn outside the yard. The can he had attempted to secrete was immediately seized by Barton, who found it to be a five gallon can filled with moonshine whiskey. In a cabin situated in the back yard the officers found several empty cans like that containing the five gallons of whiskey and quite a number of pint and half-pint bottles, one of which was partly filled with moonshine whiskey, and others, as well as some of the cans, bore the odor of such whiskey.

The bottles were put in a sack and, together with the cans, including the one containing the moonshine whiskey, were taken by the officers to the county judge, by whose order one of the pint bottles was filled with moonshine whiskey from the five gallon can and labeled for identification, and the other bottles and cans with what remained of the five gallons of whiskey were destroyed. The escape of the appellant during the visit of the officers prevented his arrest until several weeks later, but the arrest of his son was effected while the officers were on the premises.

On the trial of the appellant the labeled pint bottle containing the moonshine whiskey taken from the five gallon can found on the premises was introduced in evidence, as was the record from the Fleming circuit court containing the judgment and other proceedings showing the appellant's previous trial and conviction in that court of the like offense as charged in the indictment herein, which record was, at the time of and preliminary to its introduction, identified by the clerk of the Fleming circuit court, introduced as a witness for that purpose.

In addition to that mentioned, there was other evidence, furnished by witnesses for the Commonwealth, as to the reputation of the appellant, showing it to be that of an unlawful trafficker in intoxicating liquors.

The only contradiction attempted of the facts shown by the evidence of the Commonwealth is found in the testimony of the appellant, his son and daughter, much of which is improbable and unconvincing. This is especially true of the statement of the appellant explanatory of the contents of the can he was seen to carry behind the smoke house, which, in substance, was, that if it contained anything at all it must have been a remnant of linseed oil that had previously been used in painting on the premises. His explanation of his escape from the sheriff and his deputies is also unconvincing, with respect to which his testimony was to the effect that his absence from home at that time was required by business engagements in Cincinnati or elsewhere. Both he and his children did, however, deny his, or his son's, possession of the moonshine whiskey claimed to have been found by the officers, or that there was then any such liquor in the house or on the premises; but no evidence was introduced or offered by him to contradict that of the Commonwealth as to his reputation. His evidence, as well as that of the Commonwealth, was heard and considered by the jury, whose province it was to determine from it as a whole the appellant's guilt or innocence. This they did with the result announced by their verdict, and that verdict must stand unless some legal ground is furnished by the record for disturbing it, which has not been done.

The appellant's complaint of the court's instructions, presented by his third and final contention, apparently contains no criticism of their form or language, but they are objected to through his counsel upon the ground that no instruction should have been given that would have

required the jury to pass upon the evidence, and that the only instruction authorized in the case was the one offered by him and refused by the court, which would have peremptorily directed the jury to return a verdict finding the appellant not guilty.

In our opinion the instructions given by the trial court fairly presented all the law properly required for the guidance of the jury in arriving at a verdict. For the reasons stated in the opinion the judgment is affirmed.